Mark L. Javitch (California SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

*Attorney for Plaintiff*
And those similarly situated

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| MANUEL GUADIAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OVATION TAX GROUP LLC, a California Limited Liability Company<br><br>Defendant. | Civil Action No.: 3:25-cv-00254<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff MANUEL GUADIAN, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant OVATION TAX GROUP LLC (hereinafter "Ovation" or "Defendant") to stop its illegal practice of sending unsolicited telemarketing calls to the telephones of consumers whose phone numbers were registered on the National Do Not Call Registry, and to obtain redress for all persons injured by its conduct. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse,* Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from and/or on behalf of Defendant Ovation. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

1

## NATURE OF THE ACTION

1. As a part of its marketing, Defendant Ovation placed thousands of illegal robocalls to consumers whose phone numbers were registered on the National Do Not Call Registry.

2. Defendant Ovation did not obtain consent prior to sending these unsolicited calls, and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4. The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5. The TCPA explicitly authorized the FCC to establish a "single national database" of telephone numbers belonging to those who object to receiving telephone solicitations. *Id*. § 227(c)(3).

6. By placing these robocalls to people who have registered their phone numbers on the national do-not call database, Defendant Ovation violated the privacy and statutory rights of Plaintiff and the Class.

7. Plaintiff therefore seeks an injunction requiring Defendant Ovation to stop its unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8. Plaintiff Manuel Guadian is a natural person residing in El Paso, Texas.

9. Defendant Ovation is a limited liability company organized and existing under the laws of California.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

11. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

12. This Court has specific personal jurisdiction over Defendant Ovation because Ovation caused the violating calls to be sent to Plaintiff in this District.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury occurred in this District.

## COMMON FACTUAL ALLEGATIONS

14. Defendant Ovation offers tax services to consumers.

15. Defendant Ovation sent out calls and/or voicemails using an artificial or prerecorded voice soliciting Plaintiff and the putative class for Defendant's tax services.

16. Defendant Ovation failed to obtain consent.

## PLAINTIFF'S FACTUAL ALLEGATIONS

17. Plaintiff is a natural person who resides in this District.

18. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

19. Defendant is, and at all relevant times was, a "person" as defined by 47 U.S.C. § 153(39).

20. Defendant's website is https://www.ovationtaxgroup.com.

21. Defendant offers tax services to consumers throughout the United States.

22. To promote its services, Defendant Ovation engages and relies on telemarketing utilizing artificial or prerecorded voice messages.

23. Defendant's telemarketing campaign consists of sending ringless voicemails to hundreds and thousands of consumers residential telephone numbers without obtaining the recipient's prior express written consent.

24. The ringless voicemails used in Defendant's telemarketing campaign contain an artificial or prerecorded voice.

25. On November 21, 2022, the Federal Communications Commission ("FCC") ruled that ringless voicemails are subject to the TCPA and require consumer consent.

26. The FCC found that ringless voicemails are "calls" made using an artificial or prerecorded voice.

27. Plaintiff's telephone number ending in 6018 is a residential number and is registered to a cellular telephone service.

28. Plaintiff's telephone number ending in 6018 is used for personal purposes and is not associated with business.

29. Plaintiff successfully registered his telephone number ending in 6018 on the National Do-Not-Call Registry on March 5, 2023, which was more than 31 days prior to receiving the alleged calls in this complaint.

30. Despite this, Plaintiff fell victim to Defendant's telemarketing campaign as he received at least two ringless voicemails from Defendant on the same day, May 23, 2025.

31. When Plaintiff listened to the voicemails, the voicemails played the same exact artificial or prerecorded voice message that stated:
> "Hi, this is Dani Rickman with American Tax Relief Advisors, my direct line is 202-278-4638 at extension 5, it's Friday morning May 23 and I'm reaching out because time is almost on a critical update that could directly impact your situation in January new relief guidelines were announced that allow qualifying tax debts over one hundred eighty days old as well as missed filings to be reclassified in relief programs that means depending on your situation you can drastically reduce or even eliminate what you owe this is your final action before the newly extended relief period ends if you've been outing this off or unsure whether you qualify a quick and free consultation call today can clear up your situation call me direct at my extension or my team with no wait at 833-850-2391 again that number is 833-850-2391 the process is fast, completely confidential and our team can walk you through everything in just a few minutes."

32. In attempt to disguise its identity, Defendant Ovation does not reveal its name in the artificial or prerecorded voice messages used in its telemarketing campaign.

33. Defendant Ovation is well aware that ringless voicemails that contain an artificial or prerecorded voice message are in violation of the TCPA.

34. Upon information and belief, Defendant Ovation's telemarketing campaign has reached thousands of other consumers' telephone numbers such as Plaintiff.

35. Defendant Ovation willfully engages in illegal telemarketing for financial gain.

36. The ringless voicemails Plaintiff received from Defendant Ovation instruct Plaintiff to call back phone number 833-850-2391.

37. On the same day, May 23, 2025, Plaintiff investigated the ringless voicemails he received from Defendant and called phone number 833-850-2391.

38. Plaintiff was connected to an agent with Defendant Ovation named Stan Miller (hereinafter "Miller") who falsely identified himself with "The Tax Group."

39. "The Tax Group" is an unregistered fictitious name used by Defendant Ovation.

40. Defendant Ovation trains its agents not to reveal the company's information until the end of the call only if they have a qualified client.

41. To qualify Plaintiff for Defendant Ovation's services, Miller went through a brief consultation with Plaintiff regarding Plaintiff's income, assets, monthly expenses, and tax filings.

42. Miller solicited Plaintiff for Defendant Ovation's tax services.

43. Miller advised Plaintiff that Defendant Ovation's fee would be between $3,500-$5,500.

44. Miller advised Plaintiff that the next step would be to make a call with the IRS to run a compliance check.

45. Plaintiff asked Miller for his company credentials and Miller refused.

46. Plaintiff ended the call with Miller.

47. Plaintiff continued his investigation and called the phone number that is listed on Ovation's website 800-668-1781 https://wwww.ovationtaxgroup.com.

48. Plaintiff was connected to a female agent with Defendant Ovation.

49. Plaintiff advised the agent that he was just speaking with Miller regarding his back taxes.

50. The female agent confirmed to Plaintiff that Miller was with Defendant Ovation.

51. Plaintiff continued his investigation and called the phone number that is listed on Ovation's website 800-668-1781 https://www.ovationtaxgroup.com.

52. Upon information and belief, Defendant Ovation does not have a solicitation registration certificate on file with the Texas Secretary of State.

53. Plaintiff is a Texas resident.

54. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant Ovation's registration.

55. Defendant Ovation does not qualify for an exemption under § 302.053.

56. Plaintiff never provided his prior express written consent to receive any of the alleged calls.

57. The alleged calls were nonconsensual encounters that were not made for emergency purposes.

58. The alleged calls were made to Plaintiff for the purpose of encouraging Defendant Ovation's tax services.

59. Upon information and belief, the alleged calls were placed while knowingly ignoring the national do-not-call registry.

60. Upon information and belief, the alleged calls were placed without Defendant Ovation training its agents on the use of an internal do-not-call policy.

61. Plaintiff has never been a customer of Defendant Ovation and never knew who Defendant Ovation was prior to receiving the alleged calls.

62. Plaintiff was harmed by the alleged calls.

63.   Plaintiff was temporarily deprived of legitimate use of his phone because his privacy was improperly invaded. Moreover, the calls injured Plaintiff because they were frustrating, obnoxious, annoying, and were a nuisance and disturbed the solitude of Plaintiff.

64.   The alleged calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

## CLASS ALLEGATIONS

65.   **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**.  All persons in the United States who: (1) from the last 4 years to present (2) was called on behalf of Defendant.
>
> **Texas Subclass**.  All persons in Texas who: (1) from the last 4 years to present (2) was called on behalf of Defendant.

66.   The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

67.   **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendant sent unsolicited calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

68.   **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited calls.

69. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

70. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

71. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether the unsolicited calls were caused by Defendant;

   b. Whether the unsolicited calls promoted Defendant's products or services;

   c. Whether Defendant checked the phone numbers to be called against the Federal Do Not Call registry;

   d. Whether Defendant obtained written express consent prior to sending the unsolicited calls

  e. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendant's conduct.

  72. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(On behalf of Plaintiff and the TCPA Class)**

  73. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

  74. Defendant and/or its agents placed unsolicited phone calls to Plaintiff and the Class members' cellular and/or residential telephones without having prior express written consent to do so.

  75. The calls were made for the express purpose of soliciting consumers' for Defendant's goods and services.

76. When Plaintiff and the Class answered and/or listened to their voicemails, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

77. As a result of its unlawful conduct, Defendant repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendant to stop its illegal calling campaign.

78. Defendant and/or their agents made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

79. If the court finds that Defendant willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**Second Cause of Action:
Violation of 47 U.S.C. § 227(c)
Do Not Call Provision
(On behalf of Plaintiff and the TCPA Class)**

80. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

81. The telephone numbers of Plaintiff and the Class are registered on the Do Not Call Registry.

82. Defendant and/or its agents placed unsolicited phone calls to Plaintiff and the Class members' DNC registered telephones without having their prior written consent to do so.

83. Defendant's actions constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry 47 C.F.R. § 64.1200(c)(2).

84. Defendant's phone calls were made for the commercial purpose of soliciting Defendant's goods and services.

85. As a result of its unlawful conduct, Defendant repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages.

86. Plaintiff is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

87. Plaintiff also seeks a permanent injunction prohibiting Defendant from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## Third Cause of Action:
### Violations of The Texas Business and Commerce Code § 302.101
### Failure to obtain a Telephone Solicitation Registration Certificate
### (On behalf of Plaintiff and the Texas Subclass)

88. Plaintiff incorporates by reference all the above paragraphs as though fully repeated herein.

89. Defendant and/or its agents sent illegal solicitation sales calls to Plaintiff and the putative class without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

90. Upon information and belief the actions of the Defendant also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

91. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

92. Upon information and belief, Plaintiff sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

93. As a result of the Defendant's violations of Texas Business and Commerce Code § 302.101, Plaintiff seeks damages of $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

94.  As a result of the Defendant's violations of §302.101, Plaintiff seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MANUEL GUADIAN, individually and on behalf of the Class, prays for the following relief:

A.  An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B.  An order declaring that Defendant's actions, as set out above, violate § 227(b) of the TCPA;

C.  An order declaring that Defendant's actions, as set out above, violate § 227(c) of the TCPA;

D.  An order declaring that Defendant's actions, as set out above, violate 302.101 of the Texas Business and Commerce code;

E.  An order declaring that Defendant's actions, as set out above, violate the TCPA willfully and knowingly;

F.  An award of $1,500 per call in statutory damages arising from the TCPA § 227(b) for each intentional violation;

G.  An award of $1,500 per call in statutory damages arising from the TCPA § 227(c) for each intentional violation;

H.  An order declaring that Defendant's actions, as set out above, violate the Texas Business and Commerce code willfully and knowingly;

I.  An award of $5,000 in statutory damages arising from the Texas Business and Commerce code 302.101 for each intentional violation;

J.       An injunction requiring Defendant to cease sending all unlawful calls;

K.      An award of reasonable attorneys' fees and costs; and

L.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: July 10, 2025,         Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com

*Attorneys for Plaintiff and the Putative Class*